**[J-74-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| MARK BANFIELD, SARAH BECK, JOAN BERGQUIST, ALAN BRAU, LUCIA DAILEY, PETER DEUTSCH, CONSTANCE FEWLASS, BARBARA GLASSMAN, MARIJO HIGHLAND, JANIS HOBBS-PELLECHIO, DEBORAH JOHNSON, ANDREW MCDOWELL, JAMES MICHAELS, J. WHYATT MONDESIRE, MARY MONTRESOR, REV. JAMES MOORE, CATHY REED, REGINA SCHLITZ, ALEXANDER SICKERT, DANIEL SLEATOR, SUSANNA STAAS, STEPHEN J. STRAHS, MARY VOLLERO, JEANNE ZANG,<br><br>　　　　　Appellants<br><br>　　　　　v.<br><br>PEDRO CORTÉS, ACTING SECRETARY OF THE COMMONWEALTH,<br><br>　　　　　Appellee | : No. 83 MAP 2013<br>:<br>:<br>: Appeal from the Notice of Judgment of<br>: Commonwealth Court entered at No. 442<br>: MD 2006 entered October 15, 2013 in<br>: favor of Respondent and against<br>: petitioners on Counts I, II, III, IV, V, VI, VII,<br>: VIII, IX and X of the Petition for Review.<br>:<br>: ARGUED:  September 10, 2014 |

**OPINION**

MR. JUSTICE STEVENS　　　　　　　　　　　**DECIDED: February 17, 2015**

In this appeal, we must determine whether the Commonwealth Court erred in upholding the decision of the Secretary of the Commonwealth to certify certain direct-

recording electronic voting systems (DREs) for use in Pennsylvania elections.[1] The Commonwealth Court found that the DREs satisfy the certification requirements set forth in the Election Code[2] and do not infringe on the fundamental right to vote as protected by the Pennsylvania Constitution. For the reasons that follow, we affirm the Commonwealth Court's decision to grant the Secretary's motion for summary relief.

## I. Background

Before we consider the specific facts of this case, it is necessary to give a brief overview of our state law on voting system certification. The Election Code, enacted in 1937, initially permitted voting with paper ballots or mechanical lever voting machines. 25 P.S. §§ 2961-71 (ballots); 25 P.S. §§ 3001-18 (voting machines). In 1980, the General Assembly amended the Election Code to allow the use of electronic voting systems, which include optical scanners, punch card systems, and DREs. 25 P.S. §§ 3031.1-3031.22 (electronic voting systems). Optical scanners (akin to standardized testing methods) and punch card voting allows voters to mark selections on a paper ballot that is subsequently scanned and counted by an automatic tabulation device. In contrast, DREs display an electronic ballot on a screen and allow an individual to vote using a button, dial, or touch screen. The DREs at issue do not produce a contemporaneous paper record of an individual's vote, but store each vote on internal

---

[1] In commencing this litigation, Appellants challenged the discretion of Secretary Pedro A. Cortés, who initially certified the DREs at issue. Secretary Carol Aichele was substituted as a defendant once she began serving as head of the State Department in April 2011. Secretary Cortés was reappointed to this cabinet position in January 2015 by Governor Tom Wolf. We refer to both individuals collectively as "the Secretary."

[2] See Act of June 3, 1937, Pub.L. 1333, § 1, as amended, 25 P.S. §§ 2600, et seq. Although Appellants refer to the relevant sections of the Election Code along with their corresponding citation in Title 25, this opinion refers the statutory provisions only by the section numbers as listed in Title 25 for the sake of simplicity and brevity.

memory.  However, all of the DREs at issue are capable of printing the vote data at the close of the election; some DREs print on full sheets of paper while others print on thermal paper, which is commonly used for printing receipts.  In addition, electronic vote data can be removed from the DRE on external memory devices, such as flash drives and memory cards, and connected to a different electronic system to tally the votes.

In October 2002, Congress enacted the Help America Vote Act ("HAVA," Pub. L 107-252, formerly 42 U.S.C. § 15301, et seq., transferred to 52 U.S.C. § 20901, et seq.) to reform the nation's voting process in response to the issues that arose in the 2000 presidential election.  See generally Bush v. Gore, 531 U.S. 98 (2000).  One of HAVA's main purposes was to authorize funding for the replacement of lever and punch card voting machines with other systems that are HAVA compliant.[3]  Although the Secretary urged counties to obtain electronic voting systems, each county retained discretion on whether to replace their voting systems, provided that the chosen system met federal and state requirements.  Commonwealth of Pennsylvania State Plan as required by HAVA (Sept. 15, 2005).  One such requirement in the Election Code is that an electronic voting system must be subject to a certification process before it is deemed authorized for use in an election.  The Secretary has the duty "[t]o examine and reexamine voting machines, and to approve or disapprove them for use in this state, in accordance with the provisions of [the Election Code]."  25 P.S. § 2621(b).  A county board of elections may choose among the certified electronic voting systems and independently procure such system for use in its districts.  25 P.S. § 3031.4.  The board

---

[3] Although neither HAVA nor the Election Code expressly prohibit the use of any voting system, the Secretary found that lever machines do not comply with HAVA, which requires voting systems to "produce a permanent paper record with a manual audit capacity."  52 U.S.C. § 21081(a)(2)(B); Kuznik v. Westmoreland Cnty. Bd. of Comm'rs, 588 Pa. 95, 108, 902 A.2d 476, 483 (2006).

of elections then appoints custodians to prepare the voting system for use. 25 P.S. § 3031.10.

Appellants, twenty-four Pennsylvania voters, filed this action in 2006 in the Commonwealth Court's original jurisdiction to challenge the certification of the six DRE models in use in Pennsylvania.[4] Seeking declaratory, mandamus, and injunctive relief, Appellants claimed the Secretary should be ordered to decertify the DREs which do not comply with the Election Code and compelled to adopt more rigorous testing standards. In Count I, Appellants claimed the DREs do not meet the Election Code's definition of an electronic voting system as they cannot produce a "permanent physical record of each vote cast." 25 P.S. § 3031.1. In Count II, Appellants contended the DREs do not "preclude every person from tampering with the tabulating element." 25 P.S. §§ 3031.7(16)(iii), (17)(i). In Counts III and VII, Appellants asserted the Secretary failed to adopt adequate procedures to test the DREs' reliability, accuracy, and security. In Count IV, Appellants alleged the DREs do not allow officials to conduct a "statistical recount of a random sample of ballots…using manual, mechanical or electronic devices of a type different than those used for the specific election." 25 P.S. § 3031.17. In Count V, Appellants claimed voting officials cannot perform full recounts on DRE results. See 25 P.S. § 3154(e) (recount to assess discrepancy in election results), § 3261 (recount upon the voters' request). In Count VI, Appellants challenged the Secretary's denial of the voters' requests for reexamination of the DREs. See 25 P.S.

---

[4] The following DREs are certified for use: the AVC Edge II and AVC Advantage (made by Sequoia Voting Systems, Inc.), the iVotronic (Elections Systems & Software, Inc.), the eSlate (Hart InterCivic, Inc.), the ELECTronic 1242 (Danaher Industrial Controls), and the AccuVote TSX (Diebold Elections Systems). Upon Appellants' challenge, the Secretary decertified the WinVote (Advanced Voting Systems).

3031.5. In Counts VIII, IX, and X, Appellants claimed the DREs' certification interferes with their suffrage rights under various provisions of the Pennsylvania Constitution.[5]

The Secretary filed preliminary objections to the Petition for Review. The Commonwealth Court overruled these objections in a published opinion. Banfield v. Cortes, 922 A.2d 36 (Pa. Cmwlth. 2007) (en banc) ("Banfield I"). In the discovery phase of trial, the parties obtained reports and deposition testimony from expert witnesses who reviewed the Secretary's examination reports. Appellants retained two experts, Dr. Douglas Jones, Ph.D., and Dr. Daniel Lopresti, Ph.D., who contended that the certified DREs do not meet several requirements of the Election Code and the Secretary's certification process is inadequate to determine whether electronic voting systems meet accuracy, security and reliability requirements. In addition, Appellants relied on studies conducted by other states that reveal security vulnerabilities in the DREs at issue. The Secretary's expert, Dr. Michael I. Shamos, Ph.D., J.D., opined that both the DREs and the Secretary's certification process conform to the Election Code and the Secretary acted within his discretion in certifying the DREs at issue for use in Pennsylvania.

In August 2011, Appellants filed a motion for partial summary judgment as to Counts I, IV, VI, IX, and X, arguing they were entitled to judgment as a matter of law on claims in which the parties did not dispute the relevant technical attributes of the DREs alleged to violate the Election Code. The Secretary filed a motion for summary relief, seeking the dismissal of Appellants' action in its entirety as Appellants did not demonstrate the DREs should be decertified and improperly sought mandamus relief.

---

[5] Pa. Const. art. I, § 5 ("[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage"); Pa. Const. art. I, § 26 ("[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right"); Pa. Const. art. VII, § 6 ("[a]ll laws regulating the holding of elections by the citizens … shall be uniform throughout the state…").

The Commonwealth Court scheduled en banc argument on Appellants' motion and directed that all other matters, including the Secretary's motion, be held in abeyance.

On August 29, 2012, the Commonwealth Court denied Appellants' motion for partial summary judgment in a published, en banc opinion. Banfield v. Aichele, 51 A.3d 300, 302 (Pa. Cmwlth. 2012) (en banc) ("Banfield II"). The Commonwealth Court first rejected Appellants' multi-faceted claim in Count I that the DREs do not satisfy the Election Code's definition of an electronic voting system as they cannot "provide for a permanent physical record of each vote cast." 25 P.S. § 3031.1. While Appellants contended this provision requires a DRE to produce a contemporaneous paper record at the time a vote is cast, the Commonwealth Court construed the phrase "provide for a permanent physical record" to refer to the DREs' ability to generate such a record upon demand. Thus, the Commonwealth Court found that all the DREs at issue meet this requirement as they can print a permanent physical record when specifically requested.

Rejecting Appellants' claim that vote records must be immune from intentional or unintentional alteration to be "permanent," the Commonwealth Court emphasized that "any record, whether paper or electronic, is subject to destruction, loss, tampering or wear." Banfield II, 51 A.3d at 307. However, the Commonwealth Court reasoned that a "permanent record" must remain intact for at least the minimum periods set by law for the purposes of recounts, recanvassing, and litigation: 20 days for state contests[6] and 22 months for federal elections.[7] Noting Appellants did not challenge the permanency of DRE records printed on full sheets of paper, the Commonwealth Court majority found

---

[6] See 25 P.S. § 3070 (providing that voting machines be locked for twenty days following each election and as longer as necessary due to a vote contest).

[7] See 52 U.S.C. § 20701 (requiring federal election officers to retain and preserve for twenty-two months all records and papers related to the vote in a federal election).

that the testimony of Appellants' experts, who claimed that records printed on thermal paper are fragile and prone to fading, "was too vague and non-specific to declare as a matter of law that vote records [the DREs print] on thermal paper are not permanent." Id. at 309. The majority criticized Appellants for failing to identify which specific DREs use thermal paper and emphasized Appellants had not challenged Dr. Shamos's opinion that the legibility of thermal paper will exceed the twenty-two month federal ballot retention requirement if kept from direct exposure to heat. Moreover, the majority found the DREs' electronic data are also sufficiently permanent, but did not resolve the issue of whether such data constitutes a *physical* record as the parties did not dispute that every DRE at issue is capable of providing printed records.

In addition, the Commonwealth Court majority did not accept Appellants' claim that the DREs fail to produce a "record of each vote cast." As the DREs' vote recording process is software-dependent, Appellees claim there is no way to verify a DRE accurately recorded a voter's selections if the software is corrupted or flawed. Although it recognized the validity of this concern, the Commonwealth Court majority found Appellants' assertion that the Election Code requires software-independent voting to be inconsistent with the 1980 amendments authorizing the use of voting systems that only register votes electronically. While Appellants may rightfully question the vulnerability of DREs to tampering, the Commonwealth Court majority reasoned that the Secretary's certification and approval process is a proper safeguard against such security concerns.

Second, the Commonwealth Court concluded that Appellants were not entitled to summary judgment on Count IV in which Appellants alleged that the DREs cannot "conduct a statistical recount… using manual, mechanical or electronic devices of a type different than those used for the specific election." 25 P.S. §§ 3031.17. Reasoning that this provision merely requires that a sample of ballots be counted, not produced, by

another device, the Commonwealth Court found a statistical recount can be performed on a DRE that is capable of printing records that can be counted manually. The Commonwealth Court also discounted Appellants' claim that the statistical recount provision requires an audit to assess whether the DRE captured correct voter intent. Instead, the Commonwealth Court reasoned that this provision requires a simple retally of a statistical sample of the votes. The Commonwealth Court reiterated that the Election Code does not require software-independent vote records as several provisions authorize systems which only register votes electronically and differentiate between electronic voting systems that use paper ballots and those that do not use paper ballots. See 25 P.S. § 3154(e)(4) (providing for the recanvassing of votes for districts using electronic voting systems without paper ballots); 25 P.S. § 3262 (same).

In a footnote, the Commonwealth Court criticized Appellants' reliance on another provision which allows voters to demand a full recount in the event of fraud or error. 25 P.S. § 3261. The Commonwealth Court noted that 25 P.S. § 3031(18) clarifies that the recount procedure in Section 3261 is reserved for electronic systems utilizing paper ballots and provides that other types of electronic systems shall be assessed under Section 3262 (allowing officials to recanvass voting machines by examining the registering counter without unlocking the machine against voting). As a result, the Commonwealth Court declined to enter judgment for Appellants on Count IV.

Third, the Commonwealth Court declined to issue a writ of mandamus to order the Secretary to comply with Appellants' request in Count VI for the reexamination of previously certified electronic voting systems. See 25 P.S. § 3031.5. Acknowledging the Election Code requires the Secretary to reexamine such voting systems upon the proper request of ten or more qualified registered electors, the Commonwealth Court noted the Secretary had conceded that such examinations would be appropriate.

Unaware of whether such examinations had taken place, the Commonwealth Court ordered the parties to file a report on the status of the reexaminations.

Lastly, the Commonwealth Court dismissed Appellants' claim that Secretary's certification of the DREs resulted in constitutional violations of their fundamental right to vote. As Appellants had not shown that the Secretary's certification was illegal, the Commonwealth Court found Appellants were not entitled to judgment as a matter of law on Counts IX and X. For the foregoing reasons, the Commonwealth Court denied Appellants' motion for partial summary judgment.

Judge McCullough filed a concurring and dissenting opinion, which was joined by Judge Pellegrini. Although Judge McCullough agreed with the Majority's resolution of Counts IV, VI, IX, and X, she asserted Appellants should have been granted summary judgment on Count I as the DREs do not "provide for a permanent physical record of each vote cast." Judge McCullough rejected the Majority's finding that electronic data can be considered "permanent," arguing that such data is vulnerable to alteration undetectable to a human observer. Judge McCullough also argued that electronic data does not constitute a *physical* record of each vote cast. In addition, Judge McCullough also questioned whether records printed on thermal paper are sufficiently "permanent," crediting the testimony of Appellants' expert who claimed thermal paper can become unreadable in a matter of weeks if not stored properly. Thus, Judge McCullough concluded Appellees were entitled to judgment as a matter of law on Count I.

On January 29, 2013, the Commonwealth Court issued a single-judge order by Judge Leadbetter, finding Count VI to be moot after the Secretary performed the requested DRE reexaminations and dismissing Count I (permanent physical record of each vote cast) and Counts IV and V (statistical recount) based on the reasons set forth in the Commonwealth Court's August 29, 2012 en banc opinion (Banfield II).

On October 1, 2013, in a single-judge memorandum authored by Judge Leadbetter, the Commonwealth Court granted the Secretary's motion for summary relief on Appellants' remaining counts and entered judgment in favor of the Secretary. Banfield v. Aichele, 442 M.D. 2006 (Pa. Cmwlth. Oct. 1, 2013) ("Banfield III"). The Commonwealth Court dismissed Counts II, III, and VII in which Appellants claimed 1) the DREs do not have adequate security and 2) the Secretary's certification process was inadequate to assess DRE security. Reviewing Appellants' request for mandamus relief directing the Secretary to decertify the DREs and to establish more stringent testing standards, the Commonwealth Court emphasized that mandamus is limited to circumstances where the plaintiff has a clear legal right to compel a public official to perform a mandatory duty. Maxwell v. Bd. of Sch. Directors of Sch. Dist. of Farrell, 381 Pa. 561, 566, 112 A.2d 192, 195 (1955). Viewing Appellants' request as a demand for improper oversight of the Secretary's discretion, the Commonwealth Court found Appellants failed to establish the DREs fell short of the statutory requirements at issue as there is no evidence the DREs fail to accurately record votes. The Commonwealth Court concluded that "[s]ince voting systems will always be vulnerable to fraud, the mere possibility of a security breach is not alone sufficient to warrant overriding the Secretary's determination to certify the systems." Banfield III, 442 M.D. 2006, at *8.

Furthermore, the Commonwealth Court concluded that the Secretary was entitled to summary relief on Counts VIII, IX, and X with respect to Appellants' constitutional challenges to the certification of the DREs. Although Appellants claimed the DREs are unable to accurately record votes and thus, interfere with the fundamental right to vote of those individuals forced to use the DREs, the Commonwealth Court found that Appellants had no foundation for such arguments which are based on the faulty premise that the DREs at issue are so inaccurate and insecure as to deny them the right to vote.

Accordingly, the Commonwealth Court granted the Secretary's motion for summary relief. On October 15, 2013, the Commonwealth Court entered judgment in favor of the Secretary and against Appellants on all counts of the Petition for Review. Appellants present the following five issues for our review:

> 1. Does an [electronic voting system] "provide for a permanent physical record of each vote cast" as required by Section 1101-A [25 P.S. § 3031.1] if it only stores electronic data as votes are cast and only prints that electronic data (if ever) after an election has ended?
>
> 2. Does an electronic voting system … allow for a "statistical recount" as required by Section 1117-A [25 P.S. § 3031.17] if it cannot verify that votes were accurately captured?
>
> 3. Does an [electronic voting system] "preclude every person from tampering with the tabulating element" as required by Section 1107-A [25 P.S. §§ 3031.7(16)(iii), (17)(i)] if it has known security vulnerabilities that make it possible to alter votes?
>
> 4. Does an examination allow the Secretary to ensure that an [electronic voting system] "meets all of the requirements" of the Election Code as required by Section 1105-A if it does not test for known security vulnerabilities that make it possible to alter votes?
>
> 5. Is the certification of an [electronic voting system] narrowly tailored to achieve a compelling state interest if, unlike other available EVSs, the EVS cannot verify that votes were accurately captured?

Appellants' Brief, at 4 (reordered for review).

## II. Discussion

"An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." Jubelirer v. Rendell, 598 Pa. 16, 28, 953 A.2d 514, 521 (2008) (citations omitted).[8]

---

[8] Pennsylvania Rule of Appellate Procedure 1532(b), which governs motions for summary relief, provides: "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear. Pa.R.A.P. 1532(b).

> [I]n evaluating the Commonwealth Court's decision to grant summary relief, we examine whether there is any genuine issue of material fact and whether the moving party is entitled to relief as a matter of law. In doing so, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Murphy v. Duquesne Univ., 565 Pa. 571, 777 A.2d 418, 429 (2001)). Where there is no dispute as to any material issues of fact, we must determine whether the lower court committed an error of law in granting summary relief. Capek v. Devito, 564 Pa. 267, 767 A.2d 1047, 1048, n. 1 (2001). As with all questions of law, our scope of review is plenary.

Pennsylvania Med. Soc. v. Dep't of Pub. Welfare of Commonwealth, 614 Pa. 574, 589, 39 A.3d 267, 276-77 (2012).

## A. Permanent Physical Record of Each Vote Cast (25 P.S. § 3031.1)

Appellants argue the Commonwealth Court erred in granting Secretary summary relief on Count I as the DREs violate the Election Code by failing to provide for a permanent physical record of each vote cast. In the definitional section of the 1980 Election Code amendments permitting electronic voting, the Legislature defined an "electronic voting system" as "a system in which one or more voting devices are used to permit the registering or recording of votes and in which such votes are computed and tabulated by automatic tabulating equipment. The system shall provide for a permanent physical record of each vote cast." 25 P.S. § 3031.1 (emphasis added).

Appellants begin by emphasizing their belief that electronic data are not "physical" records as such data is composed of subatomic particles that are not perceptible through the senses. Appellants also claim electronic data cannot be considered "permanent" as such records are in an alterable state until the polls close at the end of the election. Lastly, Appellants challenge the Commonwealth Court's finding that electronic data constitute a "record of each vote cast" as the DREs' recording process is dependent on software which may be flawed or corrupted; thus, Appellants allege that one cannot be certain if the electronic data reflects voter intent.

Although Appellants concede that the DREs can print records on paper that are "physical" and "arguably permanent,"[9] Appellants claim the Commonwealth Court erred in finding the DREs' printing capability allow them to "provide for a record of each vote cast." Appellants claim the plain meaning of the requirement that the DREs "provide for" a permanent physical record should be interpreted to require a DRE to provide a contemporaneous printed record at the time the vote is cast so that voters can verify the DRE accurately recorded their votes. Appellants argue that the records printed at the end of the election are not meaningful records, as they merely report electronic data that may have been altered without detection. If this Court finds the phrase "provide for a record of each vote cast" to be ambiguous, Appellants claim that their interpretation is supported by the statute's legislative history in which they allege the members of the General Assembly expressed a distrust of computers and intended this requirement to operate as a safeguard to provide a recountable record of votes.

In response, the Secretary contends that the DREs' electronic records constitute permanent physical records. Although not definitively decided by the Commonwealth Court, the Secretary claims the DREs' electronic records are "physical" as they can be preserved for later use on removable memory cards and can remain intact for many years. With respect to the electronic records' permanency, the Secretary supports the Commonwealth Court's assessment that this requirement signifies that vote records need not last forever but must be retained for a sufficient period of time to permit recounts, recanvassing, and litigation. Moreover, the Secretary rejects Appellants' suggestion that vote records must be software-independent as the General Assembly specifically authorized the use of voting systems that only record votes electronically.

[9] In Footnote 44 of their brief, Appellants assert there is a genuine issue of disputed fact as to whether DRE vote records printed on thermal paper constitute "permanent" records, but do not develop any analysis to support this point.

The Secretary also agrees with the Commonwealth Court's finding that the DREs' printed records constitute permanent physical records of each vote cast. As the Code requires that an electronic voting system "provide for" such records, the Secretary finds this provision encompasses a DRE's ability to generate records on demand, defining the phrase "provide for" as "to make it possible for something to be done." Secretary's Brief, at 17 (citing Oxford Advanced Learners Dictionary). Although Appellants argue the printed records are simply copies of flawed electronic data, the Secretary contends this indirect attack fails for the same reasons as their direct attack on electronic data as the Legislature specifically authorized devices that only record votes electronically. If this Court finds the permanent physical record requirement ambiguous, the Secretary urges this court to give weight to her interpretation as the governmental officer charged with applying the Election Code's provisions. See 1 Pa.C.S. § 1921(c)(8). In addition, the Secretary urges this Court to consider the consequences of adopting Appellants' interpretation of the language in question to decertify the DREs in use and leave a majority of the counties in the Commonwealth without a voting system. While Appellants suggest that counties should replace DREs with optical-scan systems in which a paper ballot is counted by an electronic device, the Secretary argues that such a "solution" would pose the same issues as use of the DREs and may not be economically feasible.

This challenge requires this Court to engage in statutory interpretation of the Election Code, which, as a question of law, is subject to a *de novo* standard of review and a plenary scope of review. Sch. Dist. of Philadelphia v. Dep't of Educ., ---Pa.---, 92 A.3d 746, 751 (2014). This Court's role in statutory interpretation is to ascertain and effectuate the intent of the Legislature, giving effect to all provisions of the statute under review, if possible. 1 Pa.C.S. § 1921(a). The best indication of legislative intent is the

plain language of the statute. Bowling v. Office of Open Records, 621 Pa. 133, 156, 75 A.3d 453, 466 (2013). The plain language of each section of a statute must be read in conjunction with one another, construed with reference to the entire statute. Id. When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Accordingly, only when the words of a statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c). Id. at § 1921(c).

Keeping these principles in mind, we turn to our task of interpreting Section 3031.1's definition which states that an electronic voting system "shall provide for a permanent physical record of each vote cast." Although Appellants offer different reasons why the DREs at issue cannot meet this definition, each of their arguments is grounded in their belief that the Election Code requires an electronic voting system to produce a software-independent, voter-verified paper record at the time each vote is cast. However, while Appellants attempt to read this requirement into Section 3031.1, the plain language of the statute provides otherwise.

Appellants cannot point to any provision in the Election Code requiring an electronic voting system to print a paper ballot for each individual voter to view. On the contrary, the plain language of Section 3031.1 states that an electronic voting system shall "*provide for* a permanent physical record." 25 P.S. § 3031.1 (emphasis added). While the Oxford Dictionary defines the word "provide" as "to make available for use or supply," it separately defines the phrase "provide for" as "to make adequate preparation for (a possible event)." Oxford Dictionaries, http://www.oxforddictionaries.com/ us/definition/american_english/provide#provide__13. As the addition of the preposition "for" brings an anticipatory meaning to the phrase, we agree with the Commonwealth

Court that Appellants' interpretation of the permanent physical record provision to be a contemporaneous requirement would render the word "for" to be mere surplusage. See Commonwealth v. Lobiondo, 501 Pa. 599, 603, 462 A.2d 662, 664 (1983) (presuming that "every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect"). Thus, the Legislature's selection of the phrase "provide for" is consistent with the Commonwealth Court's interpretation requiring DREs to have the "ability to generate or supply the required records on demand."

Moreover, other Election Code provisions show the Legislature contemplated and authorized electronic voting systems that would register votes during an election without paper ballots. Section 3031.1 broadly defines "ballot" as "ballot cards or paper ballots upon which a voter registers or records his vote or the apparatus by which the voter registers his vote electronically...." 25 P.S. § 3031.1 (emphasis added). Similarly, Section 3031.1 defines "voting device" as "either an apparatus in which paper ballots or ballot cards are used in connection with an implement by which a voter registers his votes with ink or other substance or by punching, or an apparatus by which such votes are registered electronically...." Id. (emphasis added). In addition, as discussed more fully in the next issue, the Legislature set forth different full recount procedures for electronic voting systems that operate with or without paper ballots. If we were to accept Appellants' contention that the Legislature intended that electronic systems must provide voter-verified ballots, this interpretation would render meaningless provisions in which the Legislature specifically discussed voting systems that do not use paper ballots to register votes, leading to an absurd result. We presume the General Assembly does not intend a result that is absurd or unreasonable, but intends for the entire statute to be effective and certain. 1 Pa.C.S. § 1922.

Appellants argue that the DREs' printed records are mere copies of electronic data that may have been altered without detection and suggest counties should purchase optical scanners or DREs equipped with new VVPAT (Voter-Verified Paper Audit Trail) technology. Even though Appellants have raised a valid concern about DRE security, this assertion does not affect our finding that the Legislature clearly authorized electronic voting systems that do not utilize paper ballots. While VVPAT technology may offer additional security against election fraud, Appellants should direct their claims to the Legislature, which is better suited to investigate the advantages and disadvantages of VVPAT DREs and examine policy considerations that would arise from requiring voter-verified paper ballots. Although Appellants laud paper records as a panacea to voting fraud, even paper ballots are not a completely secure system without risk as there are many opportunities for tampering to occur from the time a voter casts his or her ballot until the time a winner is declared. Appellants also seem to assume there would be no practical problems in attempting to implement a contemporaneous paper record requirement while preserving voter privacy and election security.[10] As the certified DREs are able to print individual vote records at the close of an election, the DREs produce a permanent physical record of each vote cast as contemplated by Section 3031.1.[11] Thus, the Commonwealth Court correctly granted the Secretary summary relief on Count I of Appellants' Petition for Review.

---

[10] Moreover, the Secretary has also expressed concern that DREs with VVPAT technology may violate the ballot secrecy requirement in the Pennsylvania Constitution by recording individual votes on a continuous roll of paper which may allow officials to ascertain a voter's identity. See Pa. Const. art. VII, § 4 (providing that "[a]ll elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided, That secrecy in voting be preserved").

[11] While Appellants disputed in the lower court whether thermal paper records are sufficiently permanent, Appellants limited their argument to a three-sentence footnote (continued…)

## B. Statistical Recount Requirement (25 P.S. § 3031.17)

In their second challenge, Appellants claim the technical attributes of the DREs make them incapable of allowing election officials to conduct a statistical recount of election returns pursuant to Section 3031.17, which provides as follows:

> The county board of elections, as part of the computation and canvass of returns, shall conduct a <u>statistical recount of a random sample of ballots after each election using manual, mechanical or electronic devices of a type different than those used for the specific election</u>. The sample shall include at least two (2) per centum of the votes cast or two thousand (2,000) votes whichever is the lesser.

25 P.S. § 3031.17 (emphasis added).

Although the Commonwealth Court specifically found the DREs at issue can be subject to a statistical recount by printing vote records that can be counted manually at the close of the election, Appellants emphasize the DREs do not produce a record from which officials could determine if the DRE correctly recorded a voter's selection. Suggesting the Commonwealth Court incorrectly defined the term "recount," Appellants distinguish between the terms "recanvass" and "recount," claiming that a recanvass only checks whether the votes were correctly counted whereas a recount assesses whether votes were correctly captured in the first place. Appellants argue the legislative history of the 1980 amendments authorizing electronic voting systems shows a recount must

_____

(…continued)

on appeal. Appellants' Brief at 32, n. 44. Appellants have not meaningfully challenged the opinion of the Secretary's expert, Dr. Shamos, who emphasized that the permanency of thermal paper can far exceed the both the twenty-day state ballot retention requirement and the twenty-two month federal ballot retention requirement if kept from direct heat. "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." <u>Wirth v. Commonwealth</u>, ---Pa.---, 95 A.3d 822, 837 (2014).

verify voter intent as some legislators refused to support the amendments unless they contained a statistical recount to detect and deter fraud.

Even assuming that votes recorded by a DRE can be recounted, Appellants claim the DREs prevent officials from conducting a statistical recount by "devices of a type different than those used in the election" as a DRE prints software-dependent vote records. In contrast, Appellants argue that optical scan systems and VVPAT DREs meet this requirement as they retain an original voter-verified paper record which can be counted by another electronic device or by hand. Appellants again take issue with the Commonwealth Court's finding that the Election Code does not require software-independent vote records, accusing the Commonwealth Court of implicitly repealing the statistical recount requirement for electronic voting systems in Section 3031.17. As portions of the 2004 amendments pertaining to full recounts provide that electronic voting systems utilizing paper ballots must be subject to a full recount and any other type of electronic voting system be subject to a recanvass (25 P.S. § 3031.18, § 3154(e)), Appellants suggest that this distinction shows that electronic voting systems are incapable of performing any recount, including a statistical recount.

In response, the Secretary supports the Commonwealth Court's finding that the DREs can conduct a statistical recount using a "device of a different type" as required by Section 3031.17 as a DRE's printed records can be counted manually or in the alternative, a DRE's electronic records can be transferred on external media devices to be recounted on another electronic device using different software. The Secretary distinguishes the statistical recount provision from full recounts required by other Election Code provisions, claiming that while a statistical recount is automatically conducted on a small random sample of ballots at the close of every election, full recounts are only performed in the event of discrepancy in the voting results or a

request by voters to ensure against fraud or error. The Secretary claims the purpose of the statistical recount is different; a "'statistical recount' seeks merely to determine whether the original tabulation was performed correctly… [and] is not designed to be a forensic examination into whether a voter's intent was properly recorded by the machine." Secretary's Brief, at 29. Moreover, the Secretary rejects Appellants' claim that the Commonwealth Court implicitly repealed the "statistical recount" requirement by finding that the 2004 amendments authorized electronic voting systems that do not use paper ballots to register votes. The Secretary argues the Commonwealth Court never suggested that this requirement be repealed or that these provisions were in conflict.

Appellants' argument that a statistical recount requires election officials to assess whether a DRE has correctly captured voter intent is another reformulation of their contention that DREs must produce voter-verified paper ballots, which we have determined is not required by the Election Code. The plain language of Section 3031.17 supports the Commonwealth Court's finding that the statistical recount requirement constitutes a mere recount or retally of a random sample of a small percentage of the votes. Election officials can conduct a statistical recount on the DREs at issue by printing the requisite percentage of vote records for a manual count or removing the electronic data on external media devices to use a different electronic device to recount the results. The purpose of the statistical recount, or any random sampling, is to ensure that the small random sample taken is representative of the voting results of the entire population. This provision gives officials a simple method to assess whether the tabulating element of the DRE is working properly without having to print out all the votes cast at every election.

We also reject Appellants' claim that the word "recount" should be defined as an assessment of each ballot to determine voter intent and "recanvass" be defined as a

retally.  While the Election Code does not define "recount," the definitional section states that canvass "includes gathering the ballots after the election and counting, computing[,] and tallying the votes." 25 P.S. § 2602(a.1).   Since the Election Code's original enactment, the Legislature has consistently used the terms recount and recanvass to acknowledge that distinct procedures are more suitable to conduct full recounts on voting systems with different technology; ballots may be recounted and voting systems that do not use ballots may be recanvassed.  This concept is demonstrated in 25 P.S. § 3261 and 3262 (both sections addressing "Recounts"), which set forth full recount procedures to be conducted in the event of fraud, error, or a proper voter request.  The two sections contain nearly identical language except for the procedures in which the recount is conducted; while Section 3261 requires districts employing paper ballot voting to "open the ballot box … and cause the entire vote to be correctly counted," Section 3262 mandates that voting machines be "recanvassed" by examining the registering counters that record the vote totals.  25 P.S. § 3261-62.  As noted above, the term "voting machines" applies to paperless mechanical lever systems.  See In re Gen. Election for Twp. Supervisor, 620 A.2d 565, 568-69 (Pa. Cmwlth. 1993).

In the 1980 amendments, the General Assembly authorized electronic voting with the additional requirement that electronic voting systems be subject to the automatic statistical recount procedure at every election.  The Legislature subsequently clarified in the 2004 amendments that the same full recount procedures set forth in 25 P.S. § 3261 and 3262 for paper ballots and voting machines apply to electronic voting systems in the event of fraud, error, or a proper voter request; electronic systems that use paper ballots, similar to a traditional ballot box, should be subject to a recount under Section 3261 and electronic systems that register votes without paper ballots, similar to

paperless voting machines, should be subject to a recanvass under Section 3262.[12]  In making this distinction, the Legislation in no way altered the automatic statistical recount procedure, but explained the technical attributes of an electronic voting system will dictate how a full recount should be conducted.  In doing so, the General Assembly clearly contemplated how an electronic voting system processes votes and set forth procedures for officials to conduct both statistical and full recounts on electronic voting systems that do not register votes on paper ballots.[13]  Appellants' claim that the Legislature intended the word "recount" to require software-independent, voter-verifiable paper ballots runs contrary to its clear intent to authorize electronic voting systems that register votes electronically.  As the DREs are capable of performing a statistical recount, the Commonwealth Court properly granted the Secretary summary relief on Count IV of Appellants' Petition for Review.

---

[12] If an election district uses an electronic voting system with paper ballots, the board shall recount all ballots using manual, mechanical, or electronic devices of a different type used for the specific election.  25 P.S. § 3154(e)(3).  If the district uses "any other type of electronic voting systems, the county board shall conduct the recanvass similar to the procedure specified in clause (1) for voting machines."  25 P.S. § 3154(e)(4).  See also 25 P.S. § 3031.18 (emphasizing same distinction between electronic voting systems based on their use of paper ballots).

[13] The only authority Appellants cite offer for their claim that a recount must verify voter intent is Edwards v. Prutzman, 165 A. 255, 255 (Pa. Super. 1933), in which the Superior Court provided that "the recounting of the votes… is to ascertain whether there is any fraud or substantial error appearing.  This requires something more that the mere counting of the votes.  It involves the exercise of judicial functions to decide whether certain votes shall be counted or not."  This argument ignores the differences in technology offered by paper ballots and electronic voting.  While election officials conducting a manual recount of paper ballots may examine the ballots for markings that may not clearly demonstrate voter intent, a DRE touchscreen does not record ambiguous indicia of voter intent that can be reviewed during a manual recount.  See Wexler v. Anderson, 452 F.3d 1226, 1233 (11th Cir. 2006).

## C-D.  Protection from Tampering (25 P.S. § 3031.7) and the
## Adequacy of the Secretary's Examination of the DREs' Security

We will address the next two issues together as Appellants' arguments are interrelated.  In their third issue, Appellants maintain the Commonwealth Court erred in finding the DREs satisfy the statutory certification requirements set forth in Section 3031.7 related to a DRE's security from tampering:

> No electronic voting system shall, upon examination, or reexamination, be approved by the Secretary of the Commonwealth, or by any examiner appointed by him, unless it be established that such system, at the time of such examination or reexamination:
>
> . . .
> (12) Provides acceptable ballot security procedures and impoundment of ballots to prevent tampering with or substitution of any ballots...
>
> . . .
> (16) If the voting system is of a type which provides for the computation and tabulation of votes at the district level, the district component of the automatic tabulating equipment shall include the following mechanisms or capabilities:
>
> . . .
>> (iii) It shall be so constructed and controlled that, during the progress of voting, it shall preclude every person from seeing or knowing the number of votes theretofore registered for any candidate or question; and <u>it shall preclude every person from tampering with the tabulating element</u>.

25 P.S. § 3031.7 (emphasis added).

Specifically, Appellants argue that the DREs at issue cannot be deemed to have sufficient protection against tampering when the DREs have security vulnerabilities that make it possible to alter votes.  Claiming that the mere possibility that a DRE's tabulating element is susceptible to tampering warrants its decertification, Appellants argue that the plain language of the statute is obligatory as it provides that an electronic voting system "<u>shall</u> preclude every person from tampering with the tabulating element." <u>Id</u>. (emphasis added).   While the Commonwealth Court found Appellants presented "no

evidence that the challenged machines fail to accurately record votes when properly used," Appellants argue that Subsection 3031.7(16) does not include the qualifier "when properly used" and assert the Legislature drafted this section in absolute terms. Petitioners' Brief, at 39 (citing Banfield III, 442 M.D. 2006, at *6).

In their motion for summary judgment and in their appellate brief, Appellants cite to expert testimony and independent studies to support their claim that the DREs at issue must be tamper-proof to comply with the Election Code.[14]  Appellants' expert, Dr. Jones, asserted that it would be possible to inject malicious code into a DRE to change the vote tabulation.  Appellants also rely on the 2005 report of a task force convened by the Brennan Center for Justice which found that the Sequoia AVC Advantage, ES&S iVotronic and Diebold Accuvote-TSx lack a "powerful countermeasure to software attacks" and 2006 study by Princeton University researchers who claimed that a predecessor to the AccuVote-TSx was susceptible to tampering as malicious software

---

[14] *Amicus* Rutgers School of Law Constitutional Rights Clinic ("Rutgers") filed a brief in support of Appellants' challenge to the DREs' security.  Rutgers has been litigating a similar lawsuit in New Jersey to challenge the use of electronic voting systems that do not produce voter-verified ballots, claiming that DREs' vulnerability to tampering make them inherently insecure and unreliable.  Most of Rutgers's brief refers to the use of one particular DRE, the Sequoia AVC Advantage, in New Jersey elections.  Rutgers relies on expert testimony and evidence never entered into the record before the Commonwealth Court. As correctly asserted by the Secretary, consideration of such evidence by this Court would be improper since this evidence was never made part of the official record.  McCaffrey v. Pittsburgh Athletic Association, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972) (appellate court cannot consider anything which is not part of the record).  Moreover, *amicus* briefs cannot raise issues not set forth by the parties.  Hosp. & Healthsystem Ass'n of Pennsylvania v. Dep't of Pub. Welfare, 585 Pa. 106, 115, 888 A.2d 601, 606 n.10 (2005); 4 Am.Jur.2d *Amicus* § 7 (2005) ("[A]n *amicus* must accept the case before the court with the issues made by the parties. Accordingly, an *amicus* curiae ordinarily cannot inject new issues into a case which have not been presented by the parties").

could be installed onto the DRE and transferred to other systems. In addition, Appellants note the Secretaries of State in Ohio and California have decertified DREs due to perceived security vulnerabilities and other state legislatures have required DREs to have VVPAT technology.

In their fourth claim, Appellants claim the Secretary failed to use adequate testing procedures in examining the DREs' security. See 25 P.S. § 3031.5 (stating that the Secretary "shall examine the [EVS]" to verify that the system "can be safely used by voters … and meets all the requirements hereinafter set forth" in the Election Code). Characterizing the Secretary's testing as superficial and meaningless, Appellants claim the Secretary's reexaminer relied exclusively on testing of a federally recognized independent testing authority (ITA), overlooked studies evaluating the DREs' security vulnerabilities, and failed to personally examine the DREs' vulnerability to tampering. Acknowledging the Commonwealth Court found mandamus relief does not encompass a review of the Secretary's discretion as to direct the manner in which the Secretary performs her duties, Appellants contend the Secretary's reexamination was an arbitrary exercise of her discretion and based on a mistaken understanding of her duties. See Appellants' Brief, at 46 (quoting Seeton v. Pa. Game Comm'n, 594 Pa. 563, 574, 937 A.2d 1028, 1034 (2007) (providing that mandamus is "an appropriate remedy, to direct [a public official] to comply with [her] statutory mandate to the extent [she] misapprehends it")).

The Secretary asserts the Commonwealth Court correctly held that the DREs at issue preclude tampering as required by Section 3031.7(16)(iii). Criticizing Appellants' claims of tampering as "hypothetical," the Secretary maintains Appellants have not identified a single, meaningful security breach in a Pennsylvania election. The Secretary stresses that the DREs at issue have been tested and certified as secure for

reliable and accurate voting by independent federal laboratories and the Secretary's own examination. In addition, the Secretary emphasizes that the Election Code outlines additional administrative and procedural security protections to preclude individuals from tampering with the tabulating equipment of the electronic voting system. See 25 P.S. § 3031.13 (requiring that "automatic tabulating equipment … shall be locked and sealed"); id. at § 3031.21 (providing for the secure custody of the electronic voting system).

Rejecting Appellants' claim that Section 3031.7(16) demands an electronic voting system have absolute security, the Secretary maintains the Code does not require a DRE to be immune from tampering, but simply have the capability to preclude tampering, as the introductory paragraph of Section 3031.7(16) states that an electronic voting system "shall include the following mechanisms or capabilities…." (emphasis added). As all voting systems are fallible and exhibit vulnerabilities, the Secretary argues the possibility of electoral fraud or system malfunction can never be avoided no matter what type of system is used. Moreover, the Secretary emphasizes the Code gives her discretion to determine whether a particular system precludes tampering. Even if this Court does not find the plain language of this provision to be dispositive, the Secretary asserts there is no basis to conclude from the legislative history that the Legislature intended to require absolute security against all potential threats.

In response to Appellants' challenge to the certification process, the Secretary defends the Commonwealth Court's finding that Appellants failed to present any evidence that the DREs at issue actually fell short of the statutory requirements and were seeking inappropriate oversight of the Secretary's discretionary duties. Refuting Appellants claims that she ignored the DREs' vulnerabilities, the Secretary maintains that she determined that risks posed by such vulnerabilities were not sufficient to violate

the Election Code's requirements. Thus, the Secretary concludes that Appellants presented no basis for which the lower court could have concluded that she had acted arbitrarily or mistakenly in certifying the DREs for use in Pennsylvania elections.

Our resolution of this claim turns on Appellants' narrow argument that the DREs at issue should be decertified and prohibited from use in Pennsylvania elections based on the possibility that such systems are not tamper-proof. Appellants do not recognize they are advocating that the DREs be held to an impossible standard of invulnerability. We agree with the Commonwealth Court's finding that the mere possibility of error cannot bar the use of a voting system as "the unfortunate reality is that the possibility of electoral fraud can never be *completely* eliminated, no matter which type of ballot is used." Banfield III, 442 M.D. 2006, at *8 (citing Weber v. Shelley, 347 F.3d 1101, 1106-107 (9th Cir. 2003) (emphasis in original)). While Appellants claim traditional paper ballots and optical scan voting are preferable alternatives, they fail to acknowledge that such systems are also vulnerable to tampering as paper ballots can be easily destroyed or altered by an individual intending to manipulate the election result. Moreover, paper ballots may fail to accurately record voter intent as a result of mechanical or human error that leads to the invalidation of votes, in cases where ballots have not been completed in a correct and comprehensible manner, contain an overvote or undervote based on the number of permitted selections in an election, or contain markings that cannot be read by an optical scanner. As all voting systems are imperfect and not immune from tampering, the Election Code cannot be read to impose a requirement that cannot be achieved.

As the question of whether an electronic system has adequate security measures against tampering necessarily results in a subjective determination, the Legislature delegated this discretionary decision to the Secretary, who is the Pennsylvania's chief

election official. Kuznik v. Westmoreland Cnty. Bd. of Comm'rs, 588 Pa. 95, 139-40, 902 A.2d 476, 502 (2006). We have previously held that "a reviewing court will ordinarily defer to an agency's interpretation of a regulation or a statute it is charged to enforce." Id. (citation omitted).

> [W]hen the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation.... Thus, our courts will not disturb administrative discretion in interpreting legislation within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action.

Id. (quoting Winslow–Quattlebaum v. Maryland Ins. Group, 561 Pa. 629, 752 A.2d 878, 881 (2000)) (affording "great deference" to state election officials' interpretation of the Election Code in determining whether HAVA preempted Pennsylvania's referendum requirement).

As noted above, the Commonwealth Court found the Secretary was entitled to summary relief on this claim as Appellants had not shown any more than the mere possibility that the certified DREs in theory could be subject to tampering, presenting no evidence that the challenged devices have failed to accurately record votes or experienced a security breach in an actual election. Upon Appellants' request, the Secretary conducted reexaminations of the DREs with the assistance of an examiner, who reviewed federal test results of federal independent testing authorities (ITAs), created test protocols for each DRE, and performed penetration analyses to test the voting systems' security. In addition, the Secretary considered the competing opinions of the parties' experts and the studies cited by Appellants identifying vulnerabilities in the security of the certified DREs. Taking all of this information into consideration, the Secretary determined that the DREs satisfied each of the Election Code's requirements, finding their vulnerabilities do not render them necessarily defective and unfit for use in

an election when they have successfully worked to accurately record and tabulate votes in countless Pennsylvania elections. As Appellants have not alleged the Secretary's certification of the DREs was fraudulent, in bad faith, an abuse of discretion or clearly arbitrary, we decline to disturb her administrative discretion in overseeing the implementation of the Election Code which is entitled to great deference.

On the same note, Appellants are not entitled to mandamus relief based on their contention that the Secretary testing standards are inadequate to assess DRE security from tampering. The writ of mandamus is an extraordinary remedy which exists to compel official performance of a ministerial act or a mandatory duty. Brown v. Levy, 621 Pa. 1, 4, 73 A.3d 514, 516 n.2 (2013). "Where the action sought to be compelled is discretionary, mandamus will not lie to control that discretionary act, ... but courts will review the exercise of the actor's discretion where it is arbitrary or fraudulently exercised or is based upon a mistaken view of the law. Pennsylvania State Ass'n of Cnty. Comm'rs v. Commonwealth, 545 Pa. 324, 330, 681 A.2d 699, 701-702 (1996).

Before a proposed electronic system can be submitted to the Secretary's examination, the Election Code provides that the system must have first been "examined and approved by a federally recognized independent testing authority and meet[] any voting system and performance and test standards established by the Federal Government." 25 P.S. § 3031.5(a). If an electronic voting system satisfies scrutiny under federal test standards, the system may be examined by the Secretary, who must file a report "stating whether, in his opinion, the system so examined can be safely used by voters at elections as provided in this act and meets all of the requirements hereinafter set forth." 25 P.S. § 3031.5(b) (emphasis added).

While the Legislature mandated that an electronic voting system must comply with specific federal testing and performance standards and the requirements set forth

in the Election Code, it does not prescribe a particular testing procedure to govern the manner in which the Secretary is to perform the examination, but ultimately left this discretion to the expertise of the Secretary, who is tasked with implementing the Election Code. Although Appellants demand that this Court direct the Secretary to adopt more rigorous testing standards to examine DRE security, they have not provided this Court with an adequate basis to interfere with or control the Secretary's discretion as they failed to show the Secretary acted arbitrarily or mistakenly in directing the certification process.

### E. Constitutional Challenges

Lastly, Appellants contend the Commonwealth Court erred in granting the Secretary summary relief on their constitutional challenges in Counts VII, IX, & X, claiming the Secretary's certification of DREs violates Article I, Sections 5 and 26 of the Pennsylvania Constitution as these devices are susceptible to interference. See Pa. Const. art. I, § 5 (providing state action "shall … [not] interfere to prevent the free exercise of the right of suffrage"); § 26 (stating that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right"). Citing Reynolds v. Sims, 377 U.S. 533, 555 (1964), in which the Supreme Court of the United States held the right to vote "cannot be destroyed by the alternation of ballots, nor diluted by ballot-box stuffing," Appellants assert the fundamental right to vote includes the right to have one's vote counted as cast. Appellants ask this Court to apply strict scrutiny as the Secretary neither articulated a compelling state interest for certifying the DREs nor demonstrated their use is the least restrictive means of furthering a government interest.[15]

---

[15] When a statute significantly interferes with the exercise of a fundamental right, such a statute "will be upheld only if it is necessary to promote a compelling state interest and
(continued…)

In addition, Appellants claims the Secretary's certification of the DREs violates Article VII, Section 6 which provides that "[a]ll laws regulating the holding of elections by the citizens… shall be uniform throughout the State." Pa. Const. art. VII, § 6. As Pennsylvania counties may choose to utilize voting systems with or without voter-verified ballots, Appellants claim that individuals who vote on DREs will be harmed as their votes will not be weighed equally with those who vote on systems with software-independent records.

While the Secretary acknowledges that the right to vote is fundamental, the Secretary argues that this principle does not by itself require strict scrutiny of Appellants' claims. As there must be substantial governmental regulation to ensure that elections are fair, honest, and orderly, the Secretary asserts that the Commonwealth Court has applied a "gross abuse" standard to review claims challenging the constitutionality of election statutes. In re Nomination Papers of Rogers, 908 A.2d 948, 954 (Pa. Cmwlth. 2006) (single judge opinion). As such, the Secretary claims that election regulations should be found constitutional if they are "reasonable, neutral, and do not work a severe restriction on the right to vote." Secretary's Brief, at 56-57 (citing Weber, 347 F.3d at 1106). The Secretary argues Appellants have failed to show the certification and use of the DREs directly interferes with the right to vote as there is no evidence that any Pennsylvania county using DREs had experienced lost or miscounted votes, tampering of their election result, or malfunction preventing voters from casting their vote.

Moreover, the Secretary rejects Appellants' claim that the certification of DREs violates Article VII, Section 6. While this constitutional provision requires uniformity of elections, the Secretary asserts that the Constitution does not require the Legislature to

(…continued)
is narrowly tailored to effectuate that state purpose." Khan v. State Bd. of Auctioneer Examiners, 577 Pa. 166, 184, 842 A.2d 936, 947 (2004) (citations omitted).

limit the number of types of voting systems that can be simultaneously certified for use as it "permit[s] the use of voting machines, or other mechanical devices for registering or recording and computing the vote, at all elections or primaries, in any county, city, borough, incorporated town or township…." Pa. Const. art. VII, § 6. The Secretary also emphasizes that Appellants have not presented evidence to show that DREs are more susceptible to interference, fraud, or error than any other voting system. Noting the Election Code is applied uniformly to DREs and optical scanners, the Secretary asserts that both types of voting systems are subject to the same examination and certification process and the same statutory protections, such as a recanvass or recount.

Although this Court has acknowledged that the right to vote is fundamental and "pervasive of other basic civil and political rights," Bergdoll v. Kane, 557 Pa. 72, 85, 731 A.2d 1261, 1269 (1999) (citation omitted), the state may enact substantial regulation containing reasonable, non-discriminatory restrictions to ensure honest and fair elections that proceed in an orderly and efficient manner. In re Nader, 588 Pa. 450, 465, 905 A.2d 450, 459 (2006) (finding statute placing restrictions on candidates' eligibility was an "eminently reasonable" regulation which was rationally related to the Commonwealth's interest in ensuring honest and fair elections). Cf. Burdick v. Takushi, 504 U.S. 428, 434 (1992) (stating "when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions") (quotation marks omitted).

We find persuasive the decisions of federal circuit courts that have held that DREs that register votes electronically without a voter-verified ballot do not severely restrict the right to vote. As mentioned supra, the Ninth Circuit emphasized in Weber that all balloting systems are imperfect; although DREs have many significant benefits

in promoting voter turnout, offering an accurate and cost-effective method, presenting a user-friendly display, and eliminating ballot ambiguity problems exhibited by traditional paper ballots, DREs are vulnerable to programming errors and may make fraud more difficult to detect. Weber, 347 F.3d at 1106. However, the Ninth Circuit emphasized that state officials have the power to substantially regulate the election process as it is "the job of democratically-elected representatives to weigh the pros and cons of various balloting systems." Id. at 1107. Refusing to interfere with this discretion, the Ninth Circuit found that "[s]o long as their choice is reasonable and neutral, it is free from judicial second-guessing." Id. Cf. Hennings v. Grafton, 523 F.2d 861, 864 (7th Cir. 1975) (providing that "[v]oting device malfunction [and] the failure of election officials to take statutorily prescribed steps to diminish what was at most a theoretical possibility that the devices might be tampered with ... fall far short of constitutional infractions").

In claiming the uniformity requirement of Article VII, Section 6 is violated, Appellants do not assert that counties should be required to employ a single kind of voting system throughout the Commonwealth. Instead, Appellants' argument sounds in equal protection principles as they allege that voters in counties that utilize DREs are less likely to have their votes counted accurately that those voters who use systems with voter-verified ballots. Citing to Black v. McGuffage, 209 F.Supp.2d 889 (N.D. Ill. 2002), Appellants suggest that the Secretary's certification of the DREs is unconstitutional as it "arbitrarily and unnecessarily values some votes over others." Appellants' Brief at 54 (quoting Black, 209 F.Supp. at 899).

Even if we overlook the fact that Appellants never raised an equal protection claim in their Petition for Review, we reiterate that Appellants have presented no evidence to suggest that DREs are any less accurate than any other voting system. Appellants' reliance on Black is misplaced; the federal district court in Black denied

preliminary objections seeking dismissal of the action as the plaintiffs had sufficiently stated a federal Equal Protection claim in presenting voting statistics showing that voters in jurisdictions using punch card systems and optical scan systems without error notification features were "statistically less likely to have their votes counted." Black, 209 F.Supp. at 899. In contrast, in this case, Appellants were given the opportunity to develop a full record to prove their claim that the DREs' accuracy rates were inferior to those voting systems which they claim to be tamper proof. After ample discovery, Appellants failed to substantiate any of the alleged deficiencies in DRE accuracy.

As a result, we find no merit in Appellants' claim that the Secretary's certification of the DREs violated the fundamental right to vote or resulted in disparate treatment of any group of voters. As the Election Code bestows upon the Secretary the responsibility to choose between several voting systems with varying advantages and disadvantages, we see no reason to interfere with the Secretary's discretion in certifying the DREs at issue absent a showing that the decision was unreasonable or discriminatory.

### III. Conclusion

For all of the aforementioned reasons, we conclude the Commonwealth Court did not err in granting the Secretary's petition for summary relief. In particular, we find the Secretary exercised proper discretion in determining that the certified DREs satisfy the requirements for electronic voting systems set forth in the Election Code and the use of the DREs does not violate Appellants' fundamental right to vote as embodied within Article I, Section 5 of the Pennsylvania Constitution or the uniformity requirement in Article VII, Section 6 of the Pennsylvania Constitution. Thus, we affirm the Commonwealth Court's order.

Former Chief Justice Castille and Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Saylor, Messrs. Justice Eakin and Baer and Madame Justice Todd join the opinion.