J-S23002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Y.J.B.J. A/K/A Y.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3539 EDA 2017 |

Appeal from the Decree Entered September 27, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000559-2017,
CP-51-DP-0001856-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: E.S.J. A/K/A E.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.J., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3540 EDA 2017 |

Appeal from the Decree Entered September 27, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-AP-0000560-2017,
CP-51-DP-0001947-2016

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY SHOGAN, J.:                          **FILED MAY 18, 2018**

W.J. ("Father") appeals from the trial court's decrees[1] entered

September 27, 2017, which granted the petition filed by the Philadelphia

Department of Human Services ("DHS") to involuntarily terminate his parental

_____

[1] This Court consolidated the cases *sua sponte* on December 5, 2017.

_____

*   Former Justice specially assigned to the Superior Court.

rights to his daughters, Y.J.B.J., born in February of 2009, and E.S.J., born in November of 2014 (collectively, "Children"), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b).[2] After careful review, we affirm.

The trial court thoroughly summarized the facts and procedural history of this case, in relevant part, as follows:

> DHS became involved with this family on November 28, 2014, when DHS received a General Protective Services ("GPS") report that [M]other gave birth to [E.S.J. i]n November [of] 2014, and both tested positive for marijuana at the time of delivery; [Y.J.B.J.] was in the care of Father; Father admitted to having a criminal history but did not provide specific information. [E.S.J.] was subsequently released to both parents and referrals were made for community-based services.
>
> The family became involved with DHS again on August 15, 2016, when DHS received a GPS report alleging that paramedics were called to the family home; [Y.J.B.J.] told mother that she had been sexually abused by a family friend; [Y.J.B.J.] gave inconsistent information regarding the alleged abuse; [Y.J.B.J.] suffers from asthma and autism; Father was intoxicated when the paramedics arrived at the home; Father knew the family friend who committed the alleged abuse; Father admitted to drinking alcohol; Father and [M]other began arguing in the presence of the paramedics; Father accused [M]other of being a long-time drug user; [M]other stated that Father had sexually abused [Y.J.B.J.] in the past; Father wanted [Y.J.B.J.] to be examined at the hospital, but [M]other did not; and [Y.J.B.J.] was transported to Hahnemann University Hospital. This report was substantiated. DHS received a supplemental GPS report on August 16, 2016. The report stated that [Y.J.B.J.] was transported to Hahnemann University Hospital; Father appeared to be intoxicated and was belligerent; Father told hospital staff that [Y.J.B.J.] had been sexually abused by [M]other's paramour and that a knife had been involved in the incident; a medical examination was performed and . . . the

---

[2] By separate decrees, the trial court involuntarily terminated the parental rights of Y.J.J. ("Mother") on September 27, 2017. Mother did not file separate appeals, nor is Mother a party to the instant appeals.

results revealed no findings; [Y.J.B.J.] was transferred to Children's Hospital of Philadelphia ("CHOP") by ambulance. This report was substantiated.

On August 23, 2016, Father and [C]hildren went to the Philadelphia Children's Alliance ("PCA") for [Y.J.B.J] to be interviewed. PCA observed that Father smelled of alcohol and that [E.S.J.] was dressed in a shirt, diaper, and shoes that appeared to be the wrong size. PCA also observed that Father and [C]hildren had an unpleasant odor. DHS conducted an unannounced visit on the same date, August 23, 2016, at Father's home. [C]hildren were not present in the home during the visit. DHS observed that Father was intoxicated and Father admitted that he drank alcohol when the children were not present.

On August 26, 2016, DHS conducted another unannounced visit at Father's home. DHS observed that [Y.J.B.J.] was in severe respiratory distress. Father gave [Y.J.B.J.] an inhaler, but the respiratory distress continued. Father told DHS that [Y.J.B.J.] has asthma medication, but that it can only be taken with meals. Father also told DHS that he had given [Y.J.B.J.] a nebulizer treatment earlier that day. DHS called an ambulance and Father became upset and stated that [Y.J.B.J.] did not need hospital treatment. The paramedics arrived at Father's home and stated that the inhaler Father gave to [Y.J.B.J.] was empty and that the child was in severe respiratory distress. [Y.J.B.J.] was then transported to St. Christopher's Hospital for Children for treatment. While at the hospital, Father stated that [Y.J.B.J.] was faking her symptoms. On August 26, 2016, DHS obtained an OPC[3] for [Y.J.B.J.] and placed the child with her adult sister [("Kinship Parent")]. On August 27, 2016, [Kinship Parent] went to Father's home to get [Y.J.B.J.'s] clothing and [Kinship Parent] agreed that [E.S.J.] could also reside with her.

Trial Court Opinion, 1/17/18, at 1–3 (footnote omitted).

The trial court entered a shelter care order for Y.J.B.J. on August 29, 2016, and adjudicated Y.J.B.J. dependent on September 7, 2016. At Y.J.B.J.'s adjudication hearing, the trial court also ordered DHS to obtain an OPC for

---

[3] Order for Protective Custody.

E.S.J., which DHS obtained that same day. E.S.J. was adjudicated dependent on September 21, 2016.

Following Children's adjudication of dependency, the Community Umbrella Agency ("CUA") prepared a Single Case Plan ("SCP") for Father on October 28, 2016. Father's SCP objectives were to: (1) comply with CUA services and recommendations; (2) participate in supervised visits with Children at the agency; (3) sign all necessary educational documents for Children; (4) comply with all CEU recommendations; (5) enroll in drug treatment through NorthEast Treatment Center ("NET"); (6) submit to three random drug screens before the next court date; and (7) participate in Achieving Reunification Center ("ARC") services. *See* Petition for Involuntary Termination of Parental Rights, 5/18/17, at Exhibit A (referencing DHS Exhibit 10); N.T., 9/27/17, at 71.

For the next year, Father made little progress toward complying with these objectives. Accordingly, on May 18, 2017, DHS filed a petition to terminate Father's parental rights to Children and a petition to change Children's permanency goal from reunification to adoption. The trial court held a joint hearing on the petitions on September 27, 2017, during which it heard testimony of CUA case manager Tashera Maldonado, and Father.[4] At

---

[4] Children had the benefit of both legal counsel and a guardian *ad litem* during the hearing. N.T., 9/27/17, at 5–6.

the conclusion of the hearing, the trial court orally delivered its decree terminating Father's parental rights and changing the permanency goal to adoption and entered its decree that same day. Decrees, 9/27/17. On October 27, 2017, Father filed a timely notice of appeal along with a concise statement of errors complained of on appeal.

Father raises a single issue for our review:

> 1. Did the lower court err in changing the goal to adoption and terminating [Father's] parental rights under 23 Pa.C.S. §[] 2511(a)(1), (2), (5), (8) because [DHS] failed to establish by clear and convincing evidence that [Father] has evidence[d] a settled purpose of relinquishing his claim to [Children] or has refused or failed to . . . perform his parental duties; that [Father] cannot or will not be able to remedy his incapacity, abuse, neglect or refusal; and that [Father] cannot or will not remedy the conditions which led to the removal or placement of the children.

Father's Brief at 3.[5]

_____

[5] In his notice of appeal and Pa.R.A.P. 1925 statement, Father indicated that he is appealing both the termination of his parental rights and the trial court's decision to change Children's permanency goal to adoption. In his brief, however, Father has abandoned any argument relating to the goal-change determination. Accordingly, we find any issue related to the goal change waived. **Banfield v. Cortes**, 110 A.3d 155, 168 (Pa. 2015) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him." **Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014)); **In re M.Z.T.M.W**., 163 A.3d 462, 465 (Pa. Super. 2017) ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief."). Moreover, even if not waived, we would affirm the trial court's decision to change the goal based upon its thorough and detailed opinion. Trial Court Opinion, 1/17/18, at 17–20.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *In re R.I.S.*, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

*In re I.E.P.*, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" **Id**. (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Here, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).  This Court has explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child.  *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In its opinion, the trial court concluded that Father is incapable of parenting Children and that Father cannot, or will not, remedy his parental incapacity. Trial Court Opinion, 1/17/18, at 9–11. The court found credible Ms. Maldonado's testimony that Father failed to comply with his SCP objectives. *Id.*

In response, Father argues that he completed a dual diagnosis program and parenting program. Father's Brief at 9. Father contends that because he completed his dual diagnosis program the morning of the termination hearing, he was never afforded the opportunity to demonstrate his sobriety after receiving treatment. *Id.* Father asserts that the record demonstrates that he is "diligently remedying" the issues that led to Children's removal and that it would not be in Children's best interest to terminate Father's parental rights. *Id.*[6]

Our review of the record supports the trial court's findings. During the termination hearing, Ms. Maldonado testified that Father has failed to address his drug and alcohol issues. N.T., 9/27/17, at 17–21. Ms. Maldonado noted that although Father completed an outpatient drug and alcohol program at STOP,[7] he completed the program on the day of the termination hearing and continued to produce positive urine screens while participating in the program.

_____

[6] We are compelled to note that Father's argument in his brief, in addition to setting forth the relevant standards and statute, consists of two paragraphs. Father's Brief at 9.

[7] The full name of this program is not revealed in the record.

*Id*. at 17-21, 47–48. Specifically, Ms. Maldonado noted that Father tested positive for marijuana on June 28, 2017, and September 7, 2017, merely twenty days prior to the termination hearing. *Id.* at 18-19. Likewise, Ms. Maldonado recalled that Father attended a visit with Children visibly "inebriated, disengaged and even slumped over in the chair." *Id.* at 17. She testified that although Father attended all of his visits with Children, he does not engage in the visits and "there's very little contact between him [and] the girls." *Id.* at 24.

In addition to these issues, Ms. Maldonado testified that Father had not completed a parenting program or addressed his anger management issues. N.T., 9/27/17, at 21. Father also remains without appropriate housing. *Id.* at 16, 33–35. Father reported to CUA that there was a raccoon problem in his neighborhood and Father's home lacks the appropriate barriers to protect animals from entering his home. *Id.* at 34. Finally, Father's mental health continues to be a concern. *Id.* at 21. At the time of the termination hearing, Father had provided no documentation that he had been evaluated or is addressing his mental health issues. *Id.*

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Father's parental rights pursuant to Section 2511(a)(2). Father's repeated and continued incapacity, neglect, or refusal to perform his parental duties has caused Children to be without essential parental care, control or subsistence necessary for their physical and mental well-being.

Father's failure to meet his objectives supports the trial court's conclusion that Father refuses to remedy the conditions that led to Children's placement.

Having determined that Father's parental rights were properly terminated under Section 2511(a)(2), we engage in the second part of the analysis pursuant to section 2511(b), in which we determine if termination serves the best interests of Children. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). Instantly, Father has not presented a specific challenge to the termination of his parental rights under Section 2511(b); however, we decline to find waiver and shall address the trial court's findings. *See Adoption of C.L.G.*, 956 A.2d at 1010 (addressing Section 2511(b) despite the mother's failure to challenge the trial court's determination under that subsection).

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent, but under Section 2511(b), the focus is on the child. *Adoption of C.L.G.*, 956 A.2d at 1008. In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

- 11 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). While a bonding evaluation may be conducted and made part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

The trial court made the following determinations relative to the bond, or lack thereof, between Father and Children, and the needs and welfare of Children:

> Father has attended all scheduled visits with [C]hildren but he does not engage with [C]hildren at the visits. Instead, Father engages with the caregivers during visits and has very little contact with [C]hildren while the children play with each other. (N.T. 09/27/17, pgs. 23-24). At one visit, Father appeared intoxicated and disengaged. (N.T. 09/27/17, pg. 17). Although the children recognize Father, the CUA Case Manager has never observed [C]hildren referring to Father as "dad." (N.T. 09/27/17, pg. 44). Father has failed to graduate past weekly supervised visits at the agency. Father wants [C]hildren to return to his care because it would enable him to resume receiving [C]hildren's social security benefits. (N.T. 09/27/17, pgs. 22-23). [C]hildren are currently placed in a stable, loving kinship home and have been in this home since August 2016. The kinship parent, [C]hildren's older sister, is meeting their everyday needs and have bonded. This kinship home provides [C]hildren with structure that they lacked with Father. Father has never attended any medical appointments, while he has had many opportunities to ask when

the appointments are scheduled since he often interacted with the caregivers during the scheduled visits. Additionally, Father does not attend any school functions or parent-teacher conferences for [Y.J.B.J.].[7] (N.T. 09/27/17, pgs. 24-25). The kinship parent has advocated greatly on [Y.J.B.J.'s] behalf with the school district to get her the services she needs and receives support in the kinship home. (N.T. 09/27/17, pg. 30). [C]hildren would not suffer any irreparable harm if Father's rights were terminated (NJ. 09/27/17, pgs. 25-26). [C]hildren do not share a positive, healthy, paternal relationship with Father and there is no bond between [C]hildren and Father. (N.T. 09/27/17, pgs. 25-26, 27-28, 44-45). The kinship parent is very responsive in taking care of [C]hildren. (N.T. 09/27/17, pgs. 24-25). The record establishes by clear and convincing evidence that termination would not sever an existing and beneficial relationship. Father has failed to create any parental bond with [C]hildren by not being fully engaged during the visits. The trial court's termination under [Section] 2511(b) was proper and there was no abuse of discretion.

---

[7] Only [Y.J.B.J.] attends school. [E.S.J.] is three years old.

---

Trial Court Opinion, 1/17/18, at 17.

After careful review of the record in this matter, we conclude that the record supports the trial court's factual findings, and the trial court's conclusions are not the result of an error of law or an abuse of discretion with regard to Section 2511(b). Accordingly, it was proper for the trial court to determine that there was no bond such that Children would suffer permanent emotional harm if Father's parental rights are terminated and that termination served the needs and welfare of Children.

For the reasons set forth above, we conclude that Father is entitled to no relief. Therefore, we will not disturb the trial court's determination, and

we affirm the decrees involuntarily terminating Father's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/18